JOSEPH S. LOW, trustee, &c., appellant,

v.

ROBERT C. TAYLOR et al., respondents,

[Submitted July 5th, 1907. Decided November 18th, 1907.]

Where a bill of sale was given unaccompanied by the delivery of pos-
session of the property to the vendee, and it was shown to have been
made merely as security for money loaned and goods purchased, and was
not executed and recorded as required by the Chattel Mortgage act, it
will be set aside and declared void as against creditors represented by a
trustee in bankruptcy of the party executing the same.

On appeal from a decree of the court of chancery advised by
Vice-Chancellor Bergen.

*Mr. Lewis Starr,* for the appellant.

*Mr. Francis D. Weaver* and *Mr. Howard L. Miller,* for the re-
spondents.

The opinion of the court was delivered by

VROOM, J.

The bill in this case was filed by Joseph B. Low, trustee in
bankruptcy of and for Joseph S. Whitsell, for the purpose of
setting aside an alleged bill of sale executed by the said bankrupt
to one of the defendants, Robert C. Taylor, in order that the said
trustee might sell the goods and chattels mentioned therein free
and clear of any lien or supposed claim or lien of the said Taylor
by virtue of said bill of sale.

It was established and admitted that the defendant, Whitsell,
was the tenant of a farm in the county of Camden, under a lease
between himself and Sarah E. Hacker and Susannah H. Eng-
lish, which was dated December 2d, 1902, and that on October

23d, 1905, and two weeks before the petition in bankruptcy was filed, a distress warrant for $250, one year's rent, was served, and the goods and chattels of said Whitsell on. said farm levied upon thereunder. It was further admitted that judgment was entered for the balance of the rent due from Whitsell in the circuit court of Camden county on November 11th, 1905, and an execution and levy made upon the goods and chattels.

It was contended by the plaintiff that the bill of sale made by Whitsell to Taylor was not an absolute transfer of the ownership of the personal property covered thereby, but was intended by the parties to operate as security only and was in effect a chattel mortgage. There was no affidavit of consideration attached thereto, neither was it recorded as required by the act respecting chattel mortgages, which provides that

"every mortgage or conveyance intended to operate as a mortgage of goods and chattels hereafter made, which shall not be accompanied by an immediate delivery and followed by actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor and against subsequent purchasers and mortgagees in good faith, unless," &c.

Then follows the provision with relation to the affidavit and recording. *P. L. 1902 p. 437.* And that but for the filing of the petition in bankruptcy by Whitsell, the owners of the farm, being his creditors, had a status to attack the validity of the bill of sale under the Chattel Mortgage act. And further, that when a creditor is prevented from enforcing his rights as against a lien created or attempted to be created by his debtor, who afterwards became a bankrupt under the provisions of section 68 of the United States Bankruptcy act of 1898, the trustee of such bankrupt shall be subrogated to and may enforce the rights of such creditors for the benefit of the estate.

It was upon the above theory that the bill of complaint was filed; both defendants, in answering, denied that the bill of sale was given as collateral security for the payment of the indebtedness of Whitsell to Taylor, and averred that there was an immediate delivery to Taylor of the goods and chattels at the time of the execution of the bill of sale.

The testimony disclosed that on or about December 1st, 1903, Whitsell was indebted to Mr. Taylor in about the sum of $1,900, and that he wanted to borrow some money to pay his rent; that he made application to Taylor for that purpose, who agreed that he would pay him the difference between what he owed him and $2,000 if Whitsell would give him a bill of sale upon his stock, &c., then in the latter's possession. The bill of sale was executed, reciting the consideration, $2,000, dated December 1st, 1903, and recorded in December, 1905. Whitsell continued in the possession and control of the personal property set out in the bill of sale, and which consisted of about twenty cows, one bull, six horses, eleven hogs, wagons, carts and farming implements, and the crops then growing or to grow on the premises, and this possession continued on his part from that time until November, 1905, when the trustee in bankruptcy was elected. Whitsell carried on farming and a dairy business; he used the money received from both, as he stated, for the expenses of keeping the horses and cattle and for his own living expenses, if necessary, and paid none of the money received from the sale of the produce of milk to Taylor. He made some exchanges of cows, but said he consulted Taylor upon doing so.

It is difficult to understand how anyone could have had more complete control over property and the proceeds thereof than Whitsell had after executing the alleged bill of sale in December, 1903.

The learned vice-chancellor, at the hearing of this cause, determined that from the testimony of both Whitsell and Taylor there was an absolute sale of the goods mentioned in the bill of sale, and that so far as the positive testimony in the case goes, there was an absolute sale. In reaching this conclusion it seems to me that he entirely overlooked the true force and effect to be given to the testimony of both Whitsell and Taylor. The former had been examined before the referee in bankruptcy after the adjudication of bankruptcy, and the testimony of Whitsell is very important in view of the fact that he testified in the court of chancery that he had sold the stock to Taylor and that the bill of sale was not given to secure Taylor for the moneys he owed him at the time. Before the referee in bankruptcy he testified that

the bill of sale was given to secure Taylor for his money and that he intended to repay him the money. Again, in said examination, on being asked how much he owed Taylor at the time of the filing of the petition in bankruptcy, he said about $2,100, the original debt of $2,000 and the feed bill since incurred of $100. Again, he said that he owed Mr. Taylor the sum of $2,000 and interest from the time the bill of sale was made in 1903, and he further admitted having testified that he had expected to repay the $2,000 the next year after he borrowed it, and the only reason he had not done so was that he had not made it on the place.

The testimony of Mr. Taylor, to my mind, points clearly to the fact that there was no intention of doing more than to secure the debt due to him from Whitsell. The following extract is pertinent and conclusive upon the question:

"*Q.* What did he (Whitsell) say to you?

"*A.* Why, he came and wanted some money to pay his rent; he was back in the payment of his rent and I refused to give it to him without security.

"*Q.* Then he agreed to give you a bill of sale to secure you for the money he got and also for the money he owed you for the goods, is that right?

"*A.* Yes, sir; that is right.

"*Q.* And that is the arrangement between you?

"*A.* Yes, sir."

It is true Whitsell attempted to explain away the effect of his testimony in the bankruptcy proceedings by stating that he did not understand the questions there put to him, or that he "was out of shape in his mind" and did not understand until the effect of his answers was subsequently explained to him by his counsel, but it is significant, as urged by counsel for the appellant, that these claims were not made by him until after this suit was instituted attacking the validity of the bill of sale.

I am unable to assent to the view taken in the court below that the preponderance of the evidence does not reveal a condition justifying the holding that at the time the bill of sale was made that there was any intention that it should operate as a chattel mortgage or pledge; on the contrary, the facts, circumstances and the very conclusive evidence in the cause lead to the

conclusion that it was the understanding between Whitsell and Taylor that no transfer of the absolute ownership of this property was intended, and that this bill of sale was executed to Taylor to secure him, as Taylor himself admitted, for the money he had loaned and for goods and material he had sold to Whitsell.

The decree below should be reversed.

*For affirmance*—None.

*For reversal*—The Chief-Justice, Garrison, Hendrickson, Pitney, Swayze, Reed, Trenchard, Bogert, Vredenburgh, Vroom, Green, Gray, Dill—13.